## Case No. 6,222.

### HAUGHEY v. ALBIN.

[2 Bond, 244;[1] 2 N. B. R. 399 (Quarto, 129); 2 Am. Law T. Rep. Bankr. 47.]

District Court, S. D. Ohio.   Feb. Term, 1869.

BANKRUPTCY—PREFERENCE—WHEN VOID.

1. Where a member of an insolvent firm executed a note to a creditor, payable one day after date, with a power of attorney to confess judgment, the creditor knowing the insolvency of the firm, and of the member of the firm giving the note and cognovit, and judgment was entered on the note and the property of the debtor seized on execution by the sheriff, and the debtor soon after applied for the benefit of the bankrupt law, and an assignee was appointed, *held*, in an action of replevin brought by the assignee in bankruptcy against the sheriff to recover possession of the property of the bankrupt, levied on to satisfy the execution. That the giving of the note by the bankrupt firm, with a cognovit to confess judgment, was a fraudulent preference of a creditor within the meaning of section 35 of the bankrupt act [of 1867 (14 Stat. 534)].

[Cited in Alderdice v. State Bank of Virginia, Case No. 154.]

2. That such preference being in fraud of the act, the note, warrant of attorney, judgment, and execution were nullities, and that the title to the property levied on, vested in the assignee in bankruptcy, who had a right to its possession, to be disposed of for the equal benefit of all the creditors.

[Cited in Graham v. Stark, Case No. 5,676; Martin v. Toof, Id. 9,167.]

In bankruptcy.

J. Warren Keifer and Lewis H. Bond, for plaintiff.

Jacob D. Cox and Mr. Burnett, for defendant.

LEAVITT, District Judge. This is an action of replevin brought by Laban W. Haughey, as assignee of Russell B. Reeder, who, on his own petition, has been declared a bankrupt, to recover possession of a stock of merchandise held by the defendant, as sheriff of Clarke county, under a levy made by him on executions in his hands. Keturah Ann Jones and Elizabeth Bates, claiming an interest in the property by virtue of judgments recovered against Reeder before a justice of the peace of said county, and levies made by a constable on said property, by consent of the plaintiff, have been admitted as defendants in the suit. Issues have been made by the pleadings to test the question of the right of possession to the property in controversy; and a jury having been waived by the parties, the case is submitted to the court.

The material facts in evidence are that Reeder, in his own name, and as a member of the firm of Reeder & Co., had, for some years prior to his insolvency, been engaged in business in the town of South Charleston,

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

in Clarke county, as a retail dealer in various descriptions of merchandise. Reeder, for himself, and as a member of said firm, had dealt largely with the firm of Kelton, Bancroft & Co., of Columbus, prior to September 1, 1867, and about that time was indebted to said firm in his own right, and as a partner in the firm of Reeder & Co., by book account, in a sum upward of $1,500. On the 16th of September, Sheldon, the confidential clerk of said firm of Kelton, Bancroft & Co., called on Reeder at his place of business in South Charleston, and requested a settlement of the account due the firm. Reeder then paid him $200 on account, and, at the request of Sheldon, gave his promissory notes, payable one day after date, for the balance due from Reeder individually, and from the firm of Reeder & Co., giving, at the same time, warrants of attorney to confess judgments on said notes. On the 24th of September, separate judgments were entered on the notes in the court of common pleas of Delaware county; and on the same day executions were issued on the judgments, directed to the sheriff of Clarke county, which were immediately placed in the hands of the defendant [Cyrus] Albin, then being sheriff of that county. And on the 27th of September, a levy was made on the entire stock of merchandise in possession of Reeder, and Reeder & Co., under which the sheriff has since held, and to which he now asserts the right of possession, adverse to the claim of Haughey, as assignee in bankruptcy of Reeder. Reeder filed his petition in bankruptcy on November 15, 1867, and having been duly adjudged a bankrupt without objection by his creditors, the plaintiff, Haughey, was appointed assignee on the 28th of November. No objection being filed to the final discharge of Reeder, it was granted August 28, 1868. The assignee, soon after his appointment, demanded of the sheriff the possession of the merchandise held by him under the executions in his hands, which was refused.

The question for the decision of the court is, whether the assignee of Reeder, or the defendant Albin, in right of Kelton, Bancroft & Co., as creditors of Reeder, have the right to the possession of the property. On the part of the plaintiff, as assignee, it is insisted that the notes given with a cognovit to Kelton, Bancroft & Co., by Reeder, were given, he being insolvent, or in contemplation of insolvency, with knowledge by said creditors that he was then insolvent; and that, in effect, they operate as a preference over other creditors, and were in violation of the bankrupt act, and therefore void; and that a levy on executions upon the judgments created no lien on the property, which is protected or can be enforced under the act. Kelton, Bancroft & Co. insist that the judgment notes given by Reeder were executed in good faith, in the ordinary course of their business, to secure a just debt, without knowledge of

Reeder's insolvency on their part, and when Reeder did not believe he was insolvent, and, therefore, not in contemplation of insolvency or bankruptcy, or with intent to give an unlawful preference, within the meaning of the bankrupt act. They claim, therefore, that their levies are valid, and that no title to the property in question vested in the plaintiff under the assignment in bankruptcy.

The decision of this case turns upon the construction to be given to section 35 of the bankrupt act of 1867. That part of the section applicable to this case is as follows: "That if any person being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, or conveyance, or to be benefited thereby, having reasonable cause to believe such person is insolvent, and that such attachment, payment, pledge, assignment, or conveyance is made in fraud of the provisions of this law, shall be void," etc. From this and various other provisions of the bankrupt act, it is apparent that it was the intention of the law to prevent all preferences by an insolvent person, and, as far as possible, to insure the equal distribution of his property to all his creditors. And to effect this object, the statute has taken a step in advance of any prior bankrupt act in this country, and perhaps in England. It differs in a material point from our act of 1841 [5 Stat. 440]. By section 2 of that act, to render void a payment, transfer, or assignment, it must have been made "in contemplation of bankruptcy," which, as interpreted by the courts, was understood to mean a state of bankruptcy at the time of the transaction known to the bankrupt, or the expectation that he was to become a bankrupt. Now, section 35 of the present law quoted above, as applicable to unlawful preferences, includes persons "being insolvent, or in contemplation of insolvency." This is noticed here for the purpose of the remark, that from this difference in the phraseology of the two acts the cases cited by counsel involving the construction of the act of 1841 have no direct application to the case before the court.

In this case the questions are: (1) Was Reeder actually insolvent when he executed the notes to Kelton, Bancroft & Co., and gave the warrant to confess judgment on them? (2) Was it with a view to give a preference to said firm? (3) Had that firm reasonable cause to believe Reeder was insolvent at the time? If these questions can be answered affirmatively, the result will be that the notes

and cognovit, and consequently the judgments, executions, and levies, are nullities, and give no lien or title to Kelton, Bancroft & Co., to the property taken in execution by the sheriff, and no right of possession in the sheriff.

As to the first point—the actual insolvency of Reeder—the evidence leaves no room for doubt. His schedules in bankruptcy show that, at the time he gave his notes to the firm, and at the time of his application in bankruptcy, his debts and liabilities amounted to $16,000, while his entire property, by his own estimate, was but $8,000. It is true Reeder, as a witness, testifies that he did not know, on the 16th of September, when he gave the notes and cognovit, that he was insolvent. But the statute does not require this knowledge to invalidate the transaction. It requires only the existence of the fact of insolvency, to bring it within the scope of the section quoted, if the other elements contemplated by the statute, to render the transaction a nullity, co-exist.

This brings me to the second inquiry, namely: Was the execution of the notes and cognovit with a design to give Kelton, Bancroft & Co. a preference over other creditors? It is a very familiar principle of law, that every one is presumed to intend what is the necessary and unavoidable consequences of his acts. The fact of Reeder's insolvency being established, the giving of notes, payable one day after date, with a warrant to confess judgment, importing the right to an execution without delay, and a consequent levy upon his property, affords the strongest ground for the presumption that the intention was to give Kelton, Bancroft & Co. a preference over other creditors. The evidence shows, conclusively, that this was the result. The notes and cognovits were given on the 16th of September; judgment was entered on the 24th, and executions issued the same day and were put into the hands of the sheriff for service, and on the 27th levies were made on the merchandise in controversy. It is hardly to be supposed that Reeder did not know that this course could and would be taken, and it is difficult to resist the conclusion that he did not intend to give this firm a preference. All the circumstances connected with the transaction known to Reeder must have convinced him, it was the intention of Kelton, Bancroft & Co. to make an immediate levy on his property, and thus give them a preference, in violation of the policy and intention of the bankrupt act, or, in the words of the statute, "in fraud of the law." It would not be a strained construction of section 35 of the statute to hold that Reeder had thus procured his property to be taken in execution, as his act, in giving the judgment notes, naturally and certainly led to such a result—thus breaking up his business and putting him in a state of bankruptcy.

The third inquiry is: Had that firm reasonable cause to believe Reeder was insolvent at the time? On this subject there is some conflict in the testimony. Sheldon swears he did not know that Reeder was insolvent when he was applied to for a settlement, and when he procured the notes and cognovits. On the other hand, Fulton, a disinterested witness, testifies that Sheldon, about the 1st of October, stated that he had known, for two months past, that Reeder was insolvent. If this witness is credible, it establishes the fact that Sheldon was cognizant of Reeder's failing circumstances some time before he applied for a settlement and procured the notes and cognovit. But, without reference to this direct evidence, on this point, all the facts point to the conclusion that the firm had "reasonable cause" to suppose Reeder to be insolvent. The firm had been dealing with Reeder for some time, and had, without hesitation, given him credit. On his application for further credit, they refused to give it unless he would pay the sum then due, which he was unable to do. They advised him then to purchase elsewhere on credit, and raise the means to pay them. Sheldon, some time after, made a personal application to him for settlement of his account. He could pay only $200; and, on the request of Sheldon, he then gave his notes, as before stated, with warrants to enter judgments. The notes were payable one day after date, and the cognovits authorized judgments to be entered as soon as the notes were due. Judgments were entered a few days after the notes and cognovits were given, in a county other than that in which the debtor resided; and executions immediately issued, and levies were made. This surely is not according to the ordinary course of business, as between mercantile creditors and debtors of whose solvency they are confident. The witness, Sheldon, says his firm sometimes pursued this course; but it is fair to presume that such steps to collect a debt are not resorted to unless the creditor has good reason to believe his debtor is in failing circumstances. The whole course pursued by the creditor firm clearly indicates that they supposed Reeder was unable to meet his liabilities, and that great haste was necessary to enable them to get the start of other creditors.

Without pursuing this investigation further, I state it as my conclusion that this transaction, in view of all the facts, is within the scope of section 35 of the bankrupt act, and that the judgment notes are nullities, and that Kelton, Bancroft & Co. have no valid lien on the merchandise in controversy; and, consequently, that the right of possession is in the assignee and not in the sheriff. As to the claims of the aged females, Mrs. Jones and Mrs. Bates, I see no reason why their liens on the property are not protected. They were, severally, cred-

itors of Reeder long before his insolvency and application in bankruptcy. They held his notes for debts honestly due; and, when he failed to pay, suits were brought on the notes before a justice of the peace. Each obtained judgments, on which executions were issued, and levies made on the merchandise in controversy, then in possession of the sheriff under the levy on the executions in favor of Kelton, Bancroft & Co. These proceedings were all in good faith, and according to the ordinary course in such cases. They had no conference or communication with Reeder in regard to their doings; nor was it with his knowledge or at his request they brought their suits. There is no proof that they were apprised that Reeder was in doubtful circumstances or insolvent. In short, there is no fact in evidence showing any fraudulent intent in suing for their debts, or any intent to obtain an unlawful preference over other creditors. They stand, therefore, as persons who, by lawful means, have sought to secure their just rights, and wholly free from the imputation of any fraud, actual or constructive. The levies made by the sheriff on the executions upon the judgments in favor of Kelton, Bancroft & Co., being adjudged invalid, the levies by the constable on the executions in favor of Mrs. Jones and Mrs. Bates are clearly valid, and created a lien in their favor, which is protected by the bankrupt law. In one of the cases, it is claimed, the lien under the constable's levy, after the expiration of thirty days, the lifetime of the executions under the law of Ohio, was at an end. But I know not of any authority by which it can be maintained that the lien, under the facts of this case, was lost. Further proceeding on the judgment was suspended by reason of the property remaining in the possession of the sheriff, but the lien continued. The other case is like the one referred to, except that after the expiration of thirty days, and after the return of the execution by the constable, a vendi issued, upon which no proceeding was had, for the reason just stated. The lien, however, was undoubtedly preserved. Judgment in this suit, as against the defendant, Albin, will be rendered for the plaintiff, and an order entered, if necessary, for the delivery of the property to him. As to Mrs. Jones and Mrs. Bates, who were by consent, irregularly, and as I think, unnecessarily, made defendants, I do not see what judgment, if any, can be entered. Perhaps the better way would be for them to ask leave to withdraw their pleas, and for an order in the court of bankruptcy directing the assignee to allow and pay their claims in full from the proceeds of the bankrupt's estate. Such an order will be made, if required. The costs in the case, made by the two females, must also be paid from the proceeds of the bankrupt's estate. So far as Albin is concerned, there must be judgment for costs against him.