## Case No. 2,843.

In re CLARKE et al.

[2 Hughes, 405;[1] 10 N. B. R. 21.]

District Court, E. D. Virginia. March 28, 1874.

BANKRUPTCY—PREFERENCE — SURRENDER—PROOF OF DEBT — INSOLVENCY—NOTICE OF—MISTAKE—CORRECTION IN EQUITY.

1. The provisions of section 5084, Rev. St. U. S., must be construed in connection with the clause in section 5021, which prohibits certain creditors to prove their debts, so as, if possible, both may stand.

2. Where the trustee of an illegally preferred creditor surrenders the trust property to the assignee without suit, the preferred creditor may prove his debt.

3. If a deed of trust by mistake describes a note secured as signed by the maker and indorsed by an indorser, it may be corrected in equity, so as to cover a bond signed by the principal and signed by a surety as such.

4. The section 5128 does not require that the debtor should know that he is insolvent, but only that the fact should exist.

5. It does not require that the creditor should be aware that reasonable cause existed for believing the debtor insolvent, but only that the reasonable cause should exist. (This decision was before the amendment of June 22d, 1874, requiring knowledge on the part of the creditor.)

[Cited in Alderdice v. State Bank of Virginia, Case No. 154.]

6. The existence of a financial crisis constitutes of itself reasonable cause to believe men, otherwise in doubtful circumstances, to be insolvent.

In bankruptcy. This was a case of involuntary bankruptcy. The adjudication was on the 9th day of January, 1874. A deed had been given by the firm of Clarke & Daughtrey, on the 19th of September, to A. C. Withers, trustee, to secure certain debts to T. W. Smith, a merchant of Suffolk, to the amount of $1,500. By this deed the firm granted to the trustee all their estate, both real and personal, of every description, then owned and enjoyed by them, consisting of a steam sawmill and fixtures, teams, tramroad, tools, wagons, and all other appliances and appurtenances of the mill; also two tracts of land connected with their operations as lumber manufacturers, and all timber, logs, or lumber then on hand, or that might be on hand at any time before sale under the deed, including all the personalty or realty of every sort and description owned by them up to the time of foreclosure. The debts secured were evidenced by promissory notes to the amount of $1200, and the deed also secured a prospective store account, which the firm was to

[2] [From Bankr. Reg. Supp. 41.]

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

be at liberty to run up to the amount of $300 in addition. The grantors also stipulated in the deed to waive the benefit of their homestead exemption as to the notes and the accounts secured. Thus, the instrument not only covered all property of every description which the firm then owned, but all they should own up to the foreclosure of the deed, and not only secured existing debts, but a future debt of open account besides. The preferred creditor in the deed declined to put the assignee to his bill in equity to test the validity of the deeds, and after having surrendered the property to the assignee, voluntarily made himself party defendant to a petition filed in bankruptcy submitting the question of the validity of the deed. The general creditors, through the assignee, John R. Kilby, assail this deed, as one which if not void by common law and the statute law of the state, as designed to secure advantages to the debtors in fraud of other creditors, was at least void as a deed of preference made in fraud of the purposes of the bankrupt act of 1867 [14 Stat. 534].

Thomas R. Kilby, for general creditors.
A. C. Withers, and Thomas R. Borland, for preferred creditors.

HUGHES, District Judge. I need not advert to the law of Virginia relating to fraudulent acts. The first clause of the 35th section of the bankrupt act virtually embodies the state law, and, adding to its provisions, declares that if any person, being insolvent within four months before the filing of the petition against him, with a view to give preference to any creditor, makes any transfer or conveyance of any part of his property, absolutely or conditionally (the person to be benefited by such transfer having reasonable cause to believe the grantor to be insolvent, and that such transfer is made in fraud of the provisions of this act), the same shall be void, etc., etc. In order to succeed, it is incumbent on the creditors who assail this deed to show four things, viz.: 1st. That on the 19th of September last the bankrupts were insolvent. 2d. That the trust deed was intended to give a preference to T. W. Smith. 3d. That T. W. Smith had reasonable cause to believe that Clarke & Daughtrey were insolvent, and 4th. That Smith had reasonable cause to believe that the trust deed was made in fraud of the bankrupt act. [Toof v. Martin] 13 Wall. [80 U. S.] 46.

The essential questions are, whether the bankrupts were insolvent on the 19th day of September last, and whether Smith had reasonable cause to believe them so. If they were insolvent, and he had reasonable cause to believe they were, the second and fourth requirements follow as corollaries from these two facts. For, in regard to the fourth requirement, it is held—[Toof v. Martin] 13 Wall. [80 U. S.] 51—that the bankrupt act, having been designed to secure an equal distribution of the property of an insolvent debtor among his creditors, any transfer made with a view to secure his property or any part of it to one creditor, is a transfer in fraud of the act, every one being presumed to know the necessary and unavoidable consequence of his acts.

The questions for decision are, therefore, whether Clarke & Daughtrey were insolvent in September, and whether Smith had reasonable cause to believe they were. It is not necessary that Clarke & Daughtrey should have known or believed themselves to be insolvent, but only that they were in fact insolvent. It is not necessary that Smith should have believed they were insolvent, but only that he should have had reasonable cause to believe they were. As to the insolvency the facts were as follows: Clarke & Daughtrey had previously executed a deed of trust on all their existing property, on the 11th April, 1873; and this deed had not been recorded until the 4th September, 1873, two weeks before the execution of the deed of trust for the benefit of Smith. This deed was known to Smith when he took the deed for his own benefit on the 19th September. The deed of April was made for the benefit of Jones & Riddick to secure $1500, nearly all of which debt was still due and unpaid in September; and Smith knew the fact. Clarke testified by items in February to debts which he then recollected to have been owing by the firm on the 11th of September to the amount of $4,041.65. It is reasonable to suppose that their entire indebtedness in September was greater. The amount of their debts scheduled in bankruptcy in January was $5,915.72. Clarke testifies that before going to T. W. Smith in September for a loan of $500 in addition to what his firm already owed Smith, he had tried Jones & Riddick for a like loan without success, and had also tried the firm of Smith & Clark in vain. T. W. Smith knew of the application to Jones & Riddick and of its rejection before he took the deed in question. He also knew of the application to Smith & Clark, and of its failure. Several witnesses testify that these occurrences took place at the beginning of the financial crisis of last fall, when the solvency of all men engaged in trade was put to test, and when all business men were more or less pressed for money; a state of things calculated to put everybody on inquiry as to the solvency of others; a state of things tending itself to produce insolvency in doubtful cases, and itself constituting reasonable cause for believing doubtful men to be insolvent.

It is plain, from all the evidence in the cause, that, in the sense of not being able to meet their obligations as they matured in the ordinary course of business, this firm of Clarke & Daughtrey were insolvent. There is cogent evidence to the effect that they had been so during the whole summer. Even their laborers had been put off, and the wages were in great part overdue and unpaid in September. They were then and

had been quite unable to meet current payments. Whether the firm were absolutely insolvent or not in September depends upon a comparison of their debts and assets. Clarke itemizes from memory debts due in September to the amount of $4041. They were not probably less than $5000. The schedules show, as of January, that they were $5915. The debts being somewhere between five and six thousand dollars, what was the value of their property in September? We have no exact data for that date. The firm scheduled its value in January, embracing very nearly the same property which they had held in September, at a gross estimate, made by themselves, of $3565. If we add some $600, due them from sales in Baltimore, their assets do not show a value of more than $4200. Their assets actually sold (except the Baltimore credit) at what the assignee reported as a remarkably good sale (which was made on time) for the gross sum of $3275.28. These facts show that the cash value of the assets of the firm must have been materially short of the amount of their debts in September, and there is no reasonable doubt that these men were in fact insolvent at that date, whether they or their friends knew it or not. This conclusion is strongly corroborated by the additional fact that the bargain which they made with Smith, set forth in the trust deed which they gave for his benefit, was one which no man in solvent circumstances would be likely to give at all, or could give without instant destruction to his credit.

The firm of Clarke & Daughtrey being insolvent when they gave this deed of preference to Smith, the next question is, Did he have reasonable cause to believe they were? The extreme financial pressure which had then just set in must have suggested the question of solvency in a very cogent manner as to such a firm as Clarke & Daughtrey, who had already given a trust deed which remained unsatisfied. The stringent and sweeping provisions of the deed which Smith exacted of them implies, in its whole tenor, that Smith distrusted their solvency, and was providing for its probable development. He certainly knew that the firm were unable to meet the two notes already due to himself. He certainly knew that the debt of some $1400 due to Jones & Riddick, secured by the first deed, was unsatisfied, and that they could not pay it. He certainly knew that, without selling out the property covered by the two deeds, it was not possible for Clarke & Daughtrey, on the 19th of September, 1873, to pay their debts, or even to pay that portion of their debts secured by the two deeds. He, therefore, had reasonable cause not only to believe but to know the fact of insolvency, and he had reasonable cause also to believe that if the firm were then required to liquidate their debts, his deed would operate in fraud of that equal distribution of their estate among creditors which is sought to be secured by the bankrupt act. He not only had cause to believe these facts, but he is morally precluded from denying them. For no creditor has a right to claim, after exacting an assignment so stringent as to destroy the credit of an insolvent debtor and force him into bankruptcy, that he had no reasonable cause to know that the debtor was insolvent, and that the assignment would operate in fraud of a pro rata distribution of the effects in bankruptcy. This deed, interpreted by the proofs in the case, is as clear a violation of the provisions of the first clause of the thirty-fifth section of the bankrupt act as is ever likely to come for question before a court of law. It is accordingly set aside and annulled.

It is further insisted, on behalf of the general creditors, that this being a case of involuntary bankruptcy, and the adjudication having been founded upon this deed as one of the acts of bankruptcy charged to have been committed, therefore, the final clause of section 39 of the bankrupt act applies to this claim of Smith, which clause provides that a creditor who has received a conveyance such as the deed in question, having reasonable cause to believe that a fraud on the act was intended, shall not be allowed to prove his debt in bankruptcy. The provisions of this section must be construed in connection with those of section twenty-third, which allows a creditor who has accepted a deed of preference, and who has voluntarily surrendered the advantage given by such deed, by allowing the trustee to surrender the property conveyed to the assignee in bankruptcy, to share pari passu with other creditors. It has been held in many cases that where the creditor avails himself of the provisions of section 23, by voluntarily surrendering the property to the assignee, he ceases to be a party to the fraud and may prove his debt. The trustee here did surrender the property to the assignee in bankruptcy without demur. The creditor in this deed, T. W. Smith, is therefore allowed to share in the distribution of the estate on the footing of a general creditor.

Another question, which has been argued in this cause, is upon the power of this court, as a court of equity, to correct a mistake which was made in the description of one of the debts secured by the deed of 11th April. The amount secured in that instrument was $1,500. A part of that amount was represented by a bond for $250 dated February 5th, 1873. This bond was partly in the form of a promissory note, yet concluded with words, "witness our hand and seals," and was signed and sealed by Clarke & Daughtrey, and by Jones as surety. It was described in the trust deed as a note of Clarke & Daughtrey, indorsed by Jones. All parties to the note, and to the trust deed admit the mistake, and that this bond was the obligation referred to in the deed as a note indorsed. There can be no doubt of the power

of this court to correct this mistake of description. by allowing the bond to be paid out of the trust fund, all parties admitting that this was the paper intended to be provided for by the deed. It was an error made by the scrivener, which was not detected by the parties to the deed when executing it, in consequence of the bond being written in the form of a note. The authorities for the exercise of this power of correction are so numerous that they need not be cited. Besides those adduced in argument by Judge Garnett, others are given by Kerr in his book on Injunctions, p. 55. The reasons are given by Story in his chapter on "Mistake." The bond must be paid as part of the amount secured by the trust deed of 11th April.