### ALDEN, (HILLS v.)

[See Hills v. Alden, Case No. 6,507.]

---

### ALDEN, (UNITED STATES v.)

[See United States v. Alden, Case No. 14,427.]

---

## Case No. 154.

### ALDERDICE v. STATE BANK OF VIRGINIA.

[1 Hughes, 47;[1] 11 N. B. R. 398.]

District Court, E. D. Virginia. 1875.

Circuit Court, E. D. Virginia. 1875.

BANKRUPTCY — PROHIBITED AND FRAUDULENT TRANSFERS — PREFERENCES — PRESUMPTIONS AGAINST CREDITOR.

1. Where a tobacco manufacturer, who has been overchecking to a large amount for several months on a bank, by collusion with a defaulting teller; and who, on his transactions being discovered, fails to pay up his default, but executes a deed of preference to secure to the bank the amount overdrawn, within a month of involuntary proceedings in bankruptcy against him in which the adjudication goes by default; Held, that although the general business transactions and condition of the bankrupt, at the time of making the deed of preference (disconnected from the especial transactions with the bank covered by the deed), may not have been sufficient to constitute reasonable cause to believe that he was insolvent and made the deed to defeat the provisions of the bankrupt law; yet, that these especial facts out of which the deed arose, were sufficient to remove all doubt and to constitute reasonable cause of belief in the mind of the president of the preferred bank.

[See Barbour v. Priest, 103 U. S. 293; Paige v. Loring, Case No. 10,672; In re Clarke, Id. 2,843; Sedgwick v. Sheffield, Id. 12,624; Webb v. Sachs, Id. 17,325; Swan v. Robinson, 5 Fed. Rep. 287; Singer v. Sloan, Case No. 12,898; Andrews v. Graves, Id. 376; In re Broich. Id. 1,921; Darby v. Lucas, Id. 3,573; Metcalf v. Officer. 2 Fed. Rep. 640; Lindsey v. Lambert Bldg. Ass'n, 4 Fed. Rep. 48.]

2. Held, also, that bankrupt courts, in considering transactions impeached under the 35th section of the bankruptcy act. look primarily to the policy of the law forbidding dealings with failing debtors; and, if such transactions fall within the conditions specified by the section, will annul them even though positive frauds be not proved upon the beneficiaries of them.

In equity. This bill is brought on the chancery side of this court [by Alderdice, assignee, against the State Bank of Virginia and D. C. Mayo, bankrupt] to set aside a deed of preference, made by said bankrupt to said bank within four months of bankruptcy, as void under the 35th section of the bankrupt act. [Decree for complainant.]

W. W. Crump and H. A. & J. S. Wise, for complainant.

John H. Guy and Ould & Carrington, for defendants.

HUGHES, District Judge. W. C. Mayo filed his petition against David C. Mayo, tobacco manufacturer, of the city of Richmond, on the 27th of November, 1872, containing the usual allegations, and praying that David C. Mayo might be adjudicated a bankrupt. No defence was made, and the adjudication went by default on the 7th day of December, 1872. The property surrendered by the bankrupt was a certain lot of ground in Richmond, on which was his tobacco factory, and the fixtures used in the same, and certain personalty and choses in action.

The leading facts bearing upon the question of solvency are as follows: The assignee has sold the real estate for $20,200; and the fixtures in the factory for $14,700. He has also realized from all the other assets surrendered the aggregate sum of $5,632.30. From the whole assets of every name, surrendered as of the 7th of December, 1872, there has been realized the total sum of $40,532.30. The bankrupt's schedules of debts show three debts secured by deed of trust, as follows, to wit: a debt due Douglass H. Gordon for purchase-money of the lot, $7357.50; a debt due Charles E. Whitlock for a loan of $10,000, at 12 per cent. interest, made in October, 1872; and a debt due to the State Bank of Virginia of $8280.-66. These debts amount in the aggregate to $27,318.42. The schedules show other debts amounting to $40,836.28. Of this $40,836.28, all was contracted in 1872, except $6000, which grew out of a partnership account, with a partner since deceased, in 1868, of which $1000 was due in January, 1872, and the residue in 1878, 1879, 1880, 1881, and 1882. The debts are generally an open account; the exact dates at which they were contracted do not reliably appear, except, as already said, that they were contracted in 1872. The number of creditors in the schedules who have proved their debts is over 50, besides a large number of employes. At the time of the proceedings taken in bankruptcy Mayo had discounts to the amount of $56,880.50. These were ob-

---

[1] [Reported by Hon. Robert W. Hughes, District Judge. and here reprinted by permission. 11 N. B. R. 398, contains opinion of the district court only.]

tained on about 44 pieces of paper, on which others than himself were primarily bound, which were drawn on consignees of his tobacco, and which were discounted for him at various dates, from October 5th, 1872, to November 20th, 1872. The discounts had been given him mostly by the Richmond Banking and Insurance Company; the residue by several other lenders. Of these $56,-880.50 of discounts, the sum of $35,097.77 was obtained after the 28th of October. 1872. Thus it would seem that the question of solvency was doubtful at any period as much as a month before the commencement of proceedings in bankruptcy. One month before the commencement of those proceedings, namely, the 28th of October, 1872, the bankrupt made the deed of trust already mentioned, to secure the debt of $8280.66, due the State Bank of Virginia; conveying for that purpose his remaining interest in the factory lot, building, and fixtures, which were already incumbered by the two other deeds of trust from himself and wife; the first securing $7357.50 due to Gordon for unpaid purchase-money, and the other securing $10,000 of money loaned by Whitlock. The present bill in chancery is brought to impeach the validity of this third deed of trust, made in favor of the State Bank of Virginia, and to set it aside as void under the first clause of the 35th section of the general bankruptcy act. This deed was made on the 28th day of October, 1872, to secure a sum of money, all or most of which was found, on or about that day, to be due the bank from Mayo for money of the bank, which had been fraudulently obtained on overchecks, and used by Mayo for several months preceding, by collusion with its teller, and which, on detection, it would seem that Mayo could not pay.

I will assume that, but for the peculiar circumstances in which it originated, there would not be sufficient reason, to be found in the other transactions of Mayo, for invalidating the deed of the 28th of October, 1872. I will assume that although the bankrupt was in fact insolvent, and must have known his insolvency on the date of the deed, yet there was not, except in the circumstances out of which the deed grew, reasonable cause existing to bring a knowledge or belief of the insolvency home to the mind of the president of the State Bank, Mr. John L. Bacon. I will concede, what the high character of Mr. Bacon forbids me to question, that his action (which was that of the bank) in requiring and accepting the deed of preference from D. C. Mayo, was in fact honest, bona fide, free from all taint of moral fraud. I will concede, what was strenuously insisted by counsel for the bank, that courts of equity look primarily to the good faith of transactions, and are slow to set aside contracts made with honest intent and purpose. The validity of the present deed depends upon the meaning and

intent of the first clause of the 35th section of the general bankruptcy act. The object of that section is to invalidate any deed of conveyance by which a debtor makes over property to a creditor, for the purpose or securing a pre-existing debt, in preference to other pre-existing debts, within the period of four months preceding the commencement of proceedings in bankruptcy, the debtor being insolvent or contemplating insolvency, and making the deed for the purpose of preventing that pro rata distribution of his effects which is contemplated by the bankruptcy act, under circumstances which constitute reasonable cause for the creditor to believe that he was insolvent or contemplated insolvency, and made the deed with such intent. There are many contracts which the law treats as void, however honest may be the intent with which they are made. It does so for sound reasons of public policy. Among such contracts are the five classes declared void by St. 29 Car. II., c. 3, which has been adopted in all the states of the Union, commonly called the statute of frauds. They are called fraudulent contracts, not because they are so in morals, mala in se, but because they were the source of frauds. The object of the statute was to prevent the many abuses which arose from the former legality of those contracts, and it was called the statute of frauds because it was rendered necessary by those abuses, and was enacted to prevent them. I mention this statute only for the purpose of illustration. So, contracts of infants and of married women are held to be invalid by the law, not because many of them may not be strictly honest and even commendable, but because it is against the policy of the law to uphold them. In like manner, such contracts as are declared void by the 35th section of the general bankrupt act, are so treated, not because they may not, as in the instance under consideration, be free from moral fraud on the part of the preferred creditor, but because it is against the policy of the law to allow preferences to be made of one creditor over others, by debtors, within four months of bankruptcy.

As it is the policy of the general law to forbid the making of contracts with minors and women under coverture, so it is the policy of the bankruptcy law to forbid interested persons from securing preferences or transfers of property from failing debtors. As it is the policy of the general law to ignore contracts of certain kinds not reduced to writing, so it is the policy of the bankruptcy law to set aside certain contracts with failing debtors made within certain periods of their bankruptcy. In construing these latter contracts, the bankruptcy court is not bound to search for badges of positive fraud, as the ground for setting them aside, but must look primarily to that just policy of the law which is intended to se-

cure the equal right of all creditors against arrangements by debtors for the exclusive advantage of a few. In Buchanan v. Smith, 16 Wall. [83 U. S.] 301, the supreme court of the United States say, what the language of the law shows, that an "equal distribution of the property of the bankrupt, pro rata, is the main purpose which the bankrupt act seeks to accomplish," and it is in order to secure this purpose that the 35th section, rendering void certain deeds of preference, was made a part of it. But for the fact that the laws of nearly all the states permit, if they do not encourage, deeds of preference to be made by failing debtors, it is not probable that any national bankruptcy law would remain upon the statute-book a moment longer than should be necessary to subserve the immediate financial exigency in which each law usually originates. This 35th section of the present act having made a deed of preference, if executed and accepted under certain circumstances, void, it is not sufficient, as counsel for the defence insisted, for me to look into the bona fides of Mr. Bacon in deciding upon its validity. That section makes no use of the term fraud, except in a collateral expression, which refers merely to a contravention of the bankruptcy act, and refrains from treating a deed of preference as an act of moral delinquency.

The bankruptcy law takes the estate of the bankrupt into custody of its court, and transfers it to the assignee, subject to such liens by way of preference as existed more than four months (now two months) before the petition in bankruptcy, and subject to such transfers, other than those for securing pre-existing debts, as were made more than six months (now three months) before the petition. But it says to creditors and transferees: "You shall not take assignments from failing debtors within the respective periods of four and six months, in any case in which you have reasonable cause to believe that they were insolvent at the time of the assignment; you shall not do so, because such transactions contravene my policy of a pro rata distribution, which is a policy of justice." It so declares without any reference to the element of bad or good faith, except as the former may be necessarily involved in the acceptance of such assignments. Formerly, the bankruptcy law of England did not respect liens even older than four or six months, unaccompanied by actual transfers of title. It gave no more dignity to a judgment or a bond under seal than to a note or open account. It treated all these forms of indebtedness as of equal dignity, and distributed the assets in bankruptcy pro rata among these classes of claims. It was enacted in the spirit of the law merchant which treated debt as debt, and it did not give to a bond under seal or to the judgment of a court of record the sanctity of the Apostle's Creed, according to the old county court lawyer's idea. In this country the influence of the artificial distinctions and arbitrary priorities established by the old common law has dominated in our legislation, and our general bankruptcy law has been interpolated with provisions inspired by the reverence with which the old county courts of the rural districts regard the judgment lien. But this law, while respecting liens acquired beyond the period of four and six months before the bankruptcy, yet for sound reasons of justice and policy will set aside, under certain circumstances, assignments made within those periods, without special reference to the good or bad faith of the parties to them. I am not bound, therefore, to consider this deed with any reference to the moral good faith with which it was accepted by Mr. Bacon.

I am to consider, simply, whether it falls within the description of the first clause of the 35th section of the bankruptcy act. If it does, it is void; if it does not, it is valid. To be void under that clause, the deed must be liable to all the following objections: 1. It must have been made within four months of the commencement of proceedings in bankruptcy. 2. It must be a deed of preference, securing and intending to secure a pre-existing debt over other pre-existing debts. 3. The grantor must have been insolvent at the time of making the deed, or have contemplated insolvency. 4. The beneficiary must have had "reasonable cause to believe" at the time of the deed, that the grantor was insolvent, and made the deed to prevent a pro rata distribution of his effects. It is useless to enter into any inquiry whether this was, and was intended to be, a deed of preference. The fact is patent, and cannot be denied. The deed was also made, not only within four months, but within one month of the commencement of proceedings in bankruptcy.

The only disputed questions, therefore, are as to the insolvency, and as to the existence of reasonable cause for Mr. Bacon's believing the insolvency and the illegal purpose of the deed. As to the first point, there is now no doubt that the grantor in the deed was, in fact, insolvent. His whole assets brought, at what are claimed to have been good sales, forty thousand dollars, and his liabilities were, one month after the bankruptcy, about fifty-four thousand dollars. There is no reason to believe that there was a change for the worse in his affairs in so short a period, or that his energy, skill, and credit could have made good the deficiency after the developments and occurrences of the 28th of October. A creditor, within one month after the deed, filed a petition charging bankruptcy, which was not contested. Mayo was insolvent in point of fact. The only question left, therefore, is whether Mr. Bacon had reasonable cause to believe that he was insolvent, and made the deed to prevent the equal distribution of his effects contemplated

by the bankruptcy act. But for the transactions out of which this deed directly grew, I should strongly doubt whether Mr. Bacon did have reasonable cause to believe the two things mentioned. Looking at the condition of Mayo by the lights existing at the date of the deed, and not by those by which his then condition is now revealed, Mr. Bacon may not have had reason to believe that he was insolvent and made the deed as an insolvent, except for the especial facts out of which the deed directly grew. But those especial facts were sufficient beyond all doubt to create that "reasonable cause" of belief which the law makes requisite in such a case. Mayo had been clandestinely overchecking and fraudulently using the money of the bank for several months before the date of the deed, in collusion with the teller. The question for us is, why had he been thus fraudulently using these funds? His position in society and in business forbids the presumption that anything but necessity had driven him to such a course. We are obliged to conclude that he used the money of the bank because he could not meet his current obligations with money obtained in an honest manner. The Latin word "solvere," when used with reference to debt, means to pay, that is to say, to discharge with money. Insolvency means inability to pay with money. The fact that Mayo was unable to meet his debts with money honestly obtained, and had been so for several months, proves that he was insolvent, in the sense that any trader is insolvent in contemplation of law. Moreover, when his fraudulent dealing with the money of the bank was about to be publicly disclosed in October, any man of his position, pride, and character would have exhausted every effort to pay up all dues on the spot, to save both character and credit, and doubtless he did so exhaust every effort. But he did not pay up on the spot, and the conclusion is irresistible that he did not make his default good in cash, because he could not.

The insolvency which had been concealed by clandestine transactions for months was now developed and undeniably proved. None knew the facts which established it better than Mr. Bacon. The deed in question was taken because the grantor was unable to pay the money which it was given to cover and secure. The deed is itself, under these circumstances, the evidence of insolvency, and Mr. Bacon, in accepting it, accepted the most conclusive confession, proof, and notice of the insolvency which could have been brought to his mind. Being made by an insolvent man, being made to give a preference to Mr. Bacon's bank, it must have been made with the intention of intercepting from other creditors their pro rata share of the assets conveyed, for no principle has been more often decided, than that men must be presumed to intend the natural effects of their acts, and Mr. Bacon not only had reasonable but conclusive cause to believe that

it was such a deed, made for such a purpose. As to the presumption of intention from the act itself, the authorities are too numerous to be cited. Some of them are in [Toof v. Martin,] 13 Wall. [80 U. S.] 40; 1 Low. 409, [In re George, Case No. 5,325;] 1 Dill. 115, [Giddings v. Dodd, Case No. 5,405;] 1 Dill. 203, [Martin v. Toof, Case No. 9,167;] [Wilson v. City Bank,] 17 Wall. [84 U. S.] 473; Trader's Nat. Bank v. Campbell,] 14 Wall. [81 U. S.] 87; 1 Abb. (U. S.) 440, [Driggs v. Moore, Case No. 4,083;] 2 Bond, 244, [Haughey v. Albin, Case No. 6,222;] 2 Bond, 287, [Ahl v. Thorner, Case No. 103.]

The peculiar circumstances out of which the deed in question arose, distinguish the case now under consideration from those of Toof v. Martin, 13 Wall. [80 U. S.] 40; Trader's Nat. Bank v. Campbell, 14 Wall. [81 U. S.] 87; Gibson v. Warden, 14 Wall. [81 U. S.] 244; Tiffany v. Lucas, 15 Wall. [82 U. S.] 411; Buchanan v. Smith, 16 Wall. [83 U. S.] 277; Wager v. Hall. Id. 584; Walbrun v. Babbitt, Id. 577; Wilson v. City Bank, 17 Wall. [84 U. S.] 473; Bartholow v. Bean, 18 Wall. [85 U. S.] 635; Cook v. Tullis, Id. 332; Tiffany v. Boatman's Sav. Inst., Id. 375; and Clark v. Iselin, 21 Wall. [88 U. S.] 360.

The condition of Mayo in respect to his circumstances and transactions other than those connected with this deed were elaborately discussed by counsel for the defence, and those circumstances were such, I admit, as were hardly sufficient of themselves to constitute reasonable cause to believe that he was insolvent, and that any deed of preference he might make to secure a pre-existing debt must be intended to defeat a pro rata distribution among his creditors. But the especial facts inducing the deed were too cogent to admit a doubt in any dispassionate mind of the insolvency and of the intent necessarily involved in the execution of a deed under these circumstances. I ascribe Mr. Bacon's failure to appreciate the reasonable cause which the facts of the occasion presented to the excitement necessarily controlling the presiding officer of a bank upon just discovering a heavy default, which is popularly reported to have been $30,000 or $40,000, in a trusted subordinate. The law does not require that the reasonable cause it specifies shall be perceived by the beneficiary of a deed of preference, but only that it shall exist. [Toof v. Martin,] 13 Wall. [80 U. S.] 40; [Wager v. Hall,] 16 Wall. [83 U. S.] 584; 10 N. B. R. 21, [In re Clarke, Case No. 2,843;] 18 Int. Rev. Rec. 190, [Burpee v. First Nat. Bank of Janesville, Case No. 2,185.] That reasonable cause did exist in this case seems to me to be incontrovertible, and if such a case as the present one do not fall within the meaning of the first clause of the 35th section of the bankruptcy act, I can scarcely conceive how any case likely to be contested at all can be held to do so. I will give a decree setting aside the deed.

as void, and granting leave to the bank to appeal to the circuit court within ten days from its date.

Upon appeal the circuit court affirmed the decree in this case in the following opinion by the chief justice:

WAITE, Circuit Justice. We are entirely satisfied with the conclusions reached by the district judge in this case. His findings of the material facts are fully sustained by the evidence, and they need not be recapitulated. There can be no doubt of the actual insolvency of Mayo when he made his mortgage to the bank, though it may not have been generally known. His property, if converted into money, would have fallen far short of the amount necessary to pay his debts. While, therefore, he had not openly stopped payment, he was really unable to discharge his obligations in full. In our opinion, too, the bank had reasonable cause to believe him insolvent. It matters not what the bank officers actually did believe, or what others believed or had cause to believe. The question is, what ought the officers of the bank to have believed from the evidence in their possession? They knew that he owed their bank a debt which had been surreptitiously contracted by corrupting their teller, and they were told by his counsel, in the progress of their negotiations for the mortgage, that similar irregular transactions had been going on for many months previous. In fact they were told that a check for seven hundred dollars, found in the teller's cash drawer, dated a year and more before, was probably "Mayo's fee to the teller for using the bank." While others may have considered him solvent because his paper was not found on the street, they knew that to save his reputation upon the street he was dealing clandestinely with their teller, and obtaining through him accommodations which they were themselves unwilling to grant. This debt, when discovered, he did not offer to pay, but proposed to secure upon long time, and at a reduced rate of interest. They made no examination into his affairs themselves, but trusted entirely to the representation of his counsel. The mortgage was received without being executed by his wife, and there is some evidence to show that this was done because of a fear of the consequences of delay. No examination of the records was made to ascertain the condition of the title to the property, but in this, as in other things, the statements of Mayo's counsel were accepted as true. If an examination had been made, they would have discovered, that within less than a month before, he had obtained a loan of ten thousand dollars, at twelve per cent. interest and secured it by a mortgage upon the property. With even this extraordinary addition to his available capital, he was not relieved from the necessity of "using" their teller. They would also have discovered an unpaid mortgage of seven thousand dollars and more for purchase-money, which had not been disclosed to them. But there is no use in proceeding further. The evidence of insolvency was open to them in every direction, and they were certainly put upon inquiry. They are, therefore, chargeable with notice of all that, in the exercise of reasonable diligence, they could have known. No prudent business man, with the evidence before him which was within their reach, and which they ought to have considered, could possibly have come to any other conclusion than that Mayo's condition was utterly hopeless.

The mortgage, if sustained, will actually have the effect of giving the bank a preference. The secured debts, at the time the mortgage was executed, amounted to $17,500 or thereabouts, and the unsecured to $49,000. The total value of the assets was $40,500. After the secured debts were deducted, only $23,000 was left to pay $49,000. The debt to the bank was $8000, and when that was secured there remained only $15,000 to meet the $41,000. As every man is presumed to intend the necessary consequences of his acts, the presumption is that Mayo, by his mortgage, intended to give the bank the preference it apparently secured. This presumption continues until it is overcome by proof that he was ignorant of his insolvency, and that his affairs were in such a condition that he could reasonably expect to pay all his creditors in full. Toof v. Martin, 13 Wall. [80 U. S.] 40. There is no such proof. On the contrary, the evidence is all the other way. Within a month proceedings in involuntary bankruptcy were begun against him to which he made no defence, and the usual adjudication was entered upon default.

As the bank is charged with notice of his insolvency, they must also be charged with notice of his intention to give them a preference contrary to the requirements of the bankrupt law. It follows that under the operation of that law their security must fail. The bank officers have not been guilty of any moral wrong. Finding Mayo a debtor of the bank without their consent, they set about securing protection against loss. Although they knew, or had reason to believe, he was insolvent, they were under no obligation to put him into bankruptcy. A mortgage would be good as against everything but the contingency of his bankruptcy. They had the right to take their chances against the happening of such an event. If he escaped bankruptcy, the debt was secured. If not, what they did would be void.. They took the risk, and have lost: A decree may be entered affirming that below.

=====

## ALDERMEN.

(Note. Cases cited under this title will be found arranged in alphabetical order under the names of the municipalities.)